v. Blanche  Good afternoon and welcome to the Ninth Circuit. I don't see Judge Smith. Shouldn't I be seeing him? Coming soon. There we go. Oh, okay. Judge Smith is appearing virtually, unexpectedly, and Mr. Shumate will be arguing virtually, so partly virtual and partially not. In recognition of the many issues in this case, we've put 20 minutes rather than 15 minutes on the clock, and we're not going to be too tight about that either. So I will stop you after a while, but not necessarily precipitously. We will begin with Mr. Shumate arguing for the Acting Attorney General. Thank you, Your Honors. May it please the Court, Brett Shumate on behalf of the United States. I know lawyers hate it when the judges interrupt it when they're just ready to give their big spiel, but in this morning's, I don't know whether you would get this in Washington, but it's called the Los Angeles Daily Journal. And on the first page, this judge-threatened renewed oversight in Florida's immigrant child case talks about what Judge Dolly Gee, who is the presiding district judge of this case, had to say. And if I may paraphrase her, she's sick and tired after, in her case, 11 years, some before, where the government has simply ignored the settlement agreement. As a judge, when I look at it, basically the government has come up with a lot of different reasons why it doesn't want to follow the settlement agreement. It doesn't think it has to. It's not meaningful. Can you just give me a straight out answer? Is it the position of the current administration that it's not going to follow whatever we say about the settlement agreement? It's going to go ahead and do what it wants. Is that a fair statement? That is no, Your Honor. That is not a fair statement. Our position in this case is that the Florida's consent decree is a binding court order, but it should be terminated. And we've made a number of key arguments in this case why we think it's time for this important aspect of federal immigration policy to finally be returned to the executive branch. There are many reasons we've explained why the Florida's consent decree should be terminated. But if I may, I'd like to focus on just three today in my time here. First, there is no underlying violation of federal law. Second, there is no end in sight. And third, there is no jurisdiction. And the first fatal flaw in the FSA is the absence of... When you say there's no underlying violation, you're saying that none was adjudicated or that we should go back to the beginning as of the time that the agreement was entered into and decide whether there was a violation of federal law or we should decide, which is what I think. I think Horne directly precludes that. So the question should be whether there's now a violation of federal law. What exactly is your argument? So our argument is that there is no, not currently, any underlying violation of federal law, and therefore the agreement must be terminated. So now, you're looking at now. Correct, but there hasn't been any violation. Excuse me. The Supreme Court upheld the INS regulations in 1993. Well, with respect to a very narrow issue, that is whether there was a constitutional right for children to be released to people other than their parents. That was it. They said that it wouldn't... They weren't saying that if it was punitive or if... They weren't saying that if it was... If the condition didn't address the conditions, they assumed that the conditions were non-detrimental for the children. So it was a very narrow ruling. Is that wrong? No, it was a narrow ruling on the issues before the court, which were whether there were any substantive or procedural due process violations. But the key point is that the government won this case already in 1993. The key underlying claim was a ruling in favor of the United States. And yet, four years later, the government settled this case, and the Flores Consent Decree is an agreement that goes well above the constitutional floor. Which has a title to do as a consent decree. Which it was. Well, we dispute that. But setting that aside, the key... Well, there are many Supreme Court cases that say that. Well, we dispute whether this was a valid and legal consent decree at the time it was entered. But setting that aside, the plaintiffs have litigated this case for the last 30 years on the premise that the government has not been living up to its obligations under the Flores Consent Decree. And that's how they litigated this case below before Judge Gee. But the key question under Horn is whether there is an ongoing violation of federal law. And if the government has adopted durable remedies, the Supreme Court has said continued enforcement of the order is not only unnecessary or improper. And that's the thrust of our argument in the briefing and today, is that there is no ongoing violation of federal law. There are durable remedies in place. The best example of this, I think... And forgive me, counsel, and you believe that there's no violation of federal law, but what you are doing is based upon the settlement agreement? Well, the plaintiffs have certainly alleged violations of the settlement agreement. We have various appeals appealing those findings, but... Forgive me, but perhaps I was not being clear. I think I heard you say that you are complying with federal law. You're certainly not violating it, but it sounds like what you are complying with is also, in your view, in compliance with the settlement agreement. Is that right? Well, the government is making its best efforts to comply with the settlement agreement. We dispute allegations that the plaintiffs have made and the district court has found certain violations of the Flores Consent Decree. But that's neither here nor there. In this case, what Horn directs the court to consider is whether there is an underlying violation of federal law, and there is not. And DHS has implemented regulations in 2019 that provide durable remedies. As you know, those regulations have not been allowed to take effect, not because they're contrary to law under the APA, but because they failed to implement the FSA. What we're asking for is for the court to allow those regulations to take effect and for the settlement agreement to no longer micromanage in a key aspect of federal immigration policy at the border. But without an underlying violation of federal law, there's no basis for the FSA to continue. First of all, Horn was not a consent decree, right? It was an adjudicated injunction. A consent decree is necessarily, or in this instance, entered before there is a determination as to precisely what the violation of federal law is. Do you believe, do you think you have proven that there is no violation of federal law or that you should have a chance to prove it? And also, do you think that the question is whether there is a violation of the Constitution or that there is a substantial, as the Seventh Circuit said in one case, that there's a substantial likelihood that there's a violation of federal law? What exactly is the issue? Pardon my interruption. So I have two questions. Okay. We have proven that there is no underlying violation of federal law. How did you prove that? Because we won this case in the Supreme Court in 1993. Oh, I'm sorry. But I mean, what you won in the Supreme Court, as I said, was an extremely narrow issue and it had nothing to do, for example, with conditions of detention, which are an enormous dispute, both before and after the determination that led to this appeal, for the last 10 or 12 years. And also, as I said before, there is no underlying violation of federal law.
judges: FLETCHER, BERZON, SMITH